**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

JOHN DOE,

                Plaintiff,                       CASE NO.:

vs.

ONEBEACON AMERICA INSURANCE
COMPANY f/k/a COMMERCIAL UNION
 INSURANCE COMPANY,

                Defendant.

_____/

<u>**COMPLAINT**</u>

      JOHN DOE (hereinafter "DOE"), by and through his undersigned counsel, hereby sues

ONEBEACON AMERICA INSURANCE COMPANY f/k/a COMMERCIAL UNION

INSURANCE COMPANY (hereinafter the "INSURANCE CO."), and alleges:

<u>**JURISDICTION AND VENUE**</u>

      1.     This is an action for declaratory judgment and damages that exceed $75,000.00,

exclusive of attorney's fees and costs.

      2.     There is complete diversity of citizenship between the plaintiff and the defendant.

      3.     Plaintiff was born on December 18, 1964, is an adult resident of the state of

Oklahoma, and was sexually abused in the state of Florida.  He is proceeding as a JOHN DOE

due to the sensitive nature of this suit.  His identity is known to the Defendant.

      4.     At all material times hereto, defendant INSURANCE CO. was a Massachusetts

corporation with a principal address of One Beacon Land, Canton, MA 02021, and was

authorized to do business in the state of Florida.

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 2**

5.      OneBeacon America Insurance Company was formerly known as Commercial Union Insurance Company.

6.      On or about October 24, 2001, Commercial Union Insurance Company changed its name to OneBeacon America Insurance Company.

7.      The INSURANCE CO. conducts business in the state of Florida in general, and in the Northern District of Florida in particular, and is authorized to market and advertise and does sell insurance products in the state of Florida.  Pursuant to 28 USC § 1391(c), INSURANCE CO. is a resident of Alachua County, Florida.

8.      This Court has personal jurisdiction over the INSURANCE CO.

9.      Venue is proper pursuant to 28 USC § 1391(a) and (c) because INSURANCE CO. has sufficient contacts within the District and is subject to personal jurisdiction in this District.

## GENERAL FACTUAL ALLEGATIONS

10.     The ROMAN CATHOLIC DIOCESE OF SAVANNAH, and/or its predecessors, is and was at all times material hereto a corporation sole organized, existing, and doing business throughout the southeast, including the State of Florida, and having its principal place of business at 601 East Liberty St., Savannah, GA  31401. The DIOCESE is and was the entity through which the religious and other affairs of the Roman Catholic Church are and were conducted.

11.     At all material times, WAYLAND YODER BROWN (hereinafter referred to as "BROWN") was an employee, agent, representative, executive officer and/or principal of the DIOCESE, and acting within the authority and/or scope of employment or agency of the

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 3**

DIOCESE.

12.     RAYMOND W. LESSARD (hereinafter "LESSARD") is a resident of the State of Florida and is the former Bishop of the DIOCESE.  The Bishop is ultimately responsible for the priests in his DIOCESE.

13.     At all times material hereto, Defendant LESSARD was and is an employee, agent, representative, and/or apparent agent of the DIOCESE and was acting within the scope of his employment, agency, and/or representative relationship with the DIOCESE.

14.     J. KEVIN BOLAND ("BOLAND"), was the Bishop of the DIOCESE from 1995 to 2011, and was the successor in interest to his predecessors in his official position. GREGORY J. HARTMAYER ("HARTMAYER") is the current Bishop of the DIOCESE and its successor in interest.  (hereinafter the Diocese of Savannah, BOLAND and HARTMAYER shall be collectively referred to as the "DIOCESE")

15.     From approximately 1975 to 1995, Defendant BOLAND, served as personnel director for the DIOCESE.

16.     In 1978, BROWN was employed by the DIOCESE and/or LESSARD as an employee, agent, representative, priest, youth leader, confessor, counselor and as a person with authority to act for and on behalf of the DIOCESE and/or LESSARD.

17.     At all times material hereto, the DIOCESE and/or LESSARD undertook a duty to ensure their parishioners and students, Florida residents and Plaintiff included, were safe from persons that they knew or should have known were a reasonably foreseeable danger to children.

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 4**

18.     At all times material hereto, the DIOCESE and/or LESSARD owed a duty to minors, including Plaintiff during the time-period that he was a minor,  a greater degree of care because of the minor's lack of capacity to appreciate risks and avoid danger.

19.     At all times material hereto, by and through their words and conduct, the DIOCESE and/or LESSARD represented to their parishioners, including Plaintiff and his parents, that the facilities and employees, agents, and/or representatives of the DIOCESE and/or LESSARD were safe and that they could and would protect its parishioners, including Plaintiff, from reasonably foreseeable harm and that BROWN was safe to be around children, that no other children were sexually abused by BROWN, and that the DIOCESE and/or LESSARD did not possess knowledge that BROWN engaged in predatory practices and abused other children, among other things.

20.     At all times material hereto, by and through their words and actions, the DIOCESE and/or LESSARD represented to their parishioners, including Plaintiff and his parents, that the faculty and clergy, including BROWN**,** were suitable and competent to care for and/or protect and/or warn parishioners, Plaintiff included, from reasonably foreseeable harm and dangers that were known or should have been known by the DIOCESE, its agents, employees and/or representatives.

21.     At all times material hereto, BROWN was an employee, agent, representative, executive officer and/or principal of the DIOCESE and/or LESSARD.

22.     At all times material hereto, Defendant BROWN was a clergyman assigned to and/or by the DIOCESE and/or LESSARD.

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 5**

23. At all times material hereto, Defendant BROWN was assigned to numerous Catholic parishes and schools by the DIOCESE and/or LESSARD.

24. At all times material hereto, Defendant BROWN was under the direct supervision, employ, and control of the DIOCESE and/or LESSARD.

25. At all times material hereto, Defendant BROWN was acting under actual and/or apparent authority and control of the DIOCESE and/or LESSARD.

26. At all times material hereto, Defendant BROWN was acting within the scope of his employment, agency, and/or representative relationship with the DIOCESE and/or LESSARD.

27. LESSARD and BOLAND had the duty to investigate, oversee, recommend, approve, supervise, evaluate, control and place applicants for the seminary and applicants for priesthood as well as priests of the Diocese of Savannah in positions and/or assignments for and on behalf of the DIOCESE, BROWN included, and/or assist in doing so.

28. In or about 1968, BROWN began working for the DIOCESE and/or LESSARD, teaching CCD (Confraternity of Christian Doctrine) to children and as a counselor/advisor to youth.

29. As early as 1969, the DIOCESE and/or LESSARD began to learn of facts or incidents about the conduct, character, indiscretions, homosexuality, and/or sexual proclivities of BROWN which should have and/or did cause them to have serious suspicions about BROWN's fitness to be around and/or danger to minor children including the fact that a "coterie" of young boys had formed around BROWN.

Doe v. One Beacon America Insurance Company
Complaint
Page 6

30.     In or about 1972, BROWN requested to be accepted by the DIOCESE and/or LESSARD, as a seminarian for the DIOCESE.

31.     In or about 1972 and thereafter, the DIOCESE and/or LESSARD conducted an investigation before accepting BROWN as a seminarian.

32.     During this investigation, the DIOCESE and/or LESSARD again learned, knew or should have known of facts suggesting that BROWN had an inappropriate and/or consuming interest in and affection for young boys and that he had what was termed "emotional immaturity". Despite this knowledge and information, the DIOCESE and/or LESSARD accepted BROWN as a seminarian of the DIOCESE.

33.     Thereafter, the DIOCESE and/or LESSARD continued to be warned, notified, and advised by clergy and others of grave concerns regarding BROWN's danger to children.

34.     Other clergy advised the DIOCESE and/or LESSARD that BROWN should not receive Orders.

35.     In 1974, the DIOCESE and/or LESSARD further noted reservations by priests/clergy of the DIOCESE and others of BROWN's unsuitability for the priesthood and danger to children.

36.     In 1974, the DIOCESE and/or LESSARD again were informed and/or notified of perceived sexual misconduct between BROWN and young boys.  Despite this knowledge and information, the DIOCESE and/or LESSARD took no action to remove BROWN from the seminary program, to otherwise deter or prevent him from moving forward with his goal and

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 7**

plans of priesthood, to warn those children that were reasonably foreseeable to be in danger, or their parents, of such knowledge, or to control and/or supervise BROWN in any way.

37.     In 1975, the DIOCESE and/or LESSARD again noted in BROWN's personnel records extremely disturbing facts concerning his unnatural affinity toward young boys.

38.     In 1975, the DIOCESE and/or LESSARD noted in BROWN's personnel records that LESSARD conducted a personal interview with BROWN to discuss BROWN's sexual attraction to young boys, indiscrete behavior with young boys, and other disturbing personality traits not suitable to any role whatsoever within the Catholic Church and not suitable for a person employed in a position of trust and confidence with access to young children.  During this interview, BROWN admitted to various indiscretions with young boys

39.     In 1976, the DIOCESE and/or LESSARD postponed the ordination of BROWN to priesthood for a period of one year.

40.     The reason for the aforementioned postponement was primarily due to concerns of the priests and laity within the DIOCESE about the BROWN's past behavior and suitability as a priest, concerns voiced by the head of the theological seminary BROWN was attending, and his previous indiscretions and inappropriate activity with young boys.

41.     While there was a postponement of the ordination of BROWN, the DIOCESE and/or LESSARD moved forward with plans to ordain and employ BROWN as a priest for the DIOCESE and assigned him to a parish in Savannah as a deacon.

Doe v. One Beacon America Insurance Company
Complaint
Page 8

42.     Prior to the scheduled ordination of BROWN, the DIOCESE and/or LESSARD received a letter from the priest who was the Director of Vocations for the DIOCESE expressing serious concerns about the suitability of BROWN to serve as a priest.

43.     The DIOCESE and/or LESSARD were advised by the priest who was Director of Vocations as follows: "I personally feel that Wayland's (BROWN) ordination will discourage many vocations and discourage many people.   I think we would be better off to have no priest rather than an unholy priest."

44.     Prior to BROWN's ordination and employment with the DIOCESE and/or LESSARD, as a priest of the DIOCESE, the DIOCESE and/or LESSARD were warned and/or notified by clergy and others, among other things, of the following: reports of an incident involving defendant BROWN and a minor boy that resulted in the minor boy requiring psychological care, reports that another minor boy had been "traumatized" by BROWN, insinuations of BROWN's homosexual orientation, repeated reports of Brown "indiscrete" behavior with young boys, reports of BROWN's "queer" behavior, repeated references to BROWN's "emotional immaturity" and/or "incurable immaturity," questions regarding BROWN's "problem" with minor boys, reports of BROWN's desire to carry out the "father figure" role with young boys, BROWN's association with "pueri" (a latin reference to young boys), and BROWN's imprudence in his relationships with young boys, among other reports and/or notifications of BROWN's conduct with minor boys.

45.     Moreover, still prior to BROWN's ordination and employment with the DIOCESE and/or LESSARD, as a priest of the Diocese of Savannah, the DIOCESE and/or

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 9**

LESSARD were specifically notified and or received reports from clergy members and others of the following statements regarding BROWN: "I really feel he will do more harm than good for the church," "I do not see how anyone so destructive could be a priest," "if these traits of character and personality are correctly assessed, I don't see how a few years in the seminary will change him,"  "I personally could not in conscience recommend that Mr. Brown receive any Orders," "I am concerned about him personally and the people he serves," and "I think we would be better off to have no priest rather than an unholy priest," among other reports and/or notifications regarding BROWN's suitability for a position of trust and confidence enjoyed by priests employed by the DIOCESE.

46.     Despite these warnings and information obtained regarding BROWN's danger to children prior to ordination, the DIOCESE and/or LESSARD continued to permit BROWN to progress closer to his intended position as Priest and closer to unfettered access to children and took no action to deter, control, restrict, limit and/or supervise BROWN's conduct, access, or exposure to minor children attained through his employment and association with the DIOCESE and/or LESSARD.

47.     In 1977, despite these and other concerns expressed and reported to the DIOCESE and/or LESSARD, the DIOCESE and/or LESSARD decided to employ BROWN as a Roman Catholic Priest.

48.     Immediately after being ordained as a Priest, the DIOCESE and/or LESSARD assigned BROWN in a position to assume close and intimate roles and unsupervised contacts

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 10**

with young boys with no supervision, limitation, or control over BROWN's exposure and/or access to minor children.

49.     In 1978, BROWN was employed by the DIOCESE and/or LESSARD as an employee, agent, representative, priest, youth leader, confessor, counselor and as a person with authority to act for and on behalf of the DIOCESE and/or LESSARD.

50.     In 1978, Plaintiff was a minor child who attended Catholic Churches and schools owned and/or operated by the DIOCESE.

51.     In 1978, Plaintiff's family and Plaintiff were parishioners and attended services and programs offered by the DIOCESE, LESSARD and/or BROWN.

52.     In 1978, through BROWN's role as an employee, priest, youth leader, confessor, and counselor of the DIOCESE, BROWN came to have close and personal access to his parishioners, including Plaintiff.

53.     In or about 1978, through BROWN's position and work in and for the DIOCESE, Plaintiff came to know BROWN through his regular course and scope of employment by the DIOCESE and/or LEASSRD, as a priest.

54.     In 1978, the DIOCESE and LESSARD encouraged the parishioners, including Plaintiff and his family, to trust BROWN as a priest, youth leader, confessor, and counselor.

55.     In 1978, the DIOCESE and LESSARD put BROWN in a position of authority over Plaintiff, who was a minor at the time.

Doe v. One Beacon America Insurance Company
Complaint
**Page 11**

56.     In 1978, the DIOCESE and LESSARD encouraged Plaintiff and other parishioners to share with BROWN deeply personal information, confession, and other issues of personal safety and salvation.

57.     In or about 1978, BROWN began to counsel and mentor Plaintiff on the morals and teachings of the Catholic faith as a priest, youth leader, confessor, and counselor employed by the DIOCESE and/or LESSARD.

58.     In or about 1978, BROWN bought Plaintiff gifts and also formed a relationship of trust and confidence with Plaintiff's mother.

59.     In or about 1978, based on the BROWN's position of employment as a priest with the DIOCESE and the teaching and instruction of Diocesan employees, agents, and/or representatives, Plaintiff admired, trusted, revered, and respected BROWN, as a holy man, clergyman, counselor, and spiritual advisor.

60.     In or about 1978, by the teachings and instruction of the DIOCESE, their agents, employees, and representatives, Plaintiff was taught and instructed to revere and respect clergy like BROWN, and because BROWN was employed in a position of trust, authority, and respect, BROWN was able to have control and influence over Plaintiff.  As a result thereof, combined with the actions of the DIOCESE and/or LESSARD, Plaintiff and his family entrusted in BROWN Plaintiff's personal safety and shared with BROWN, Plaintiff's most confidential information, thoughts, and feelings.

61.     In or about 1978, by the DIOCESE's and/or LESSARD's words and actions, the DIOCESE and/or LESSARD represented to Plaintiff that their relationship was one in which

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 12**

BROWN was to provide counseling, comfort, and advice to Plaintiff and that they, BROWN included, would act in the Plaintiff's best interests.

62.     In or about the summer of 1978, BROWN offered to take Plaintiff on a summer trip to Jacksonville, Disney World in Orlando/Kissimmee Florida, and other locations.

63.     In or about the summer of 1978, BROWN counseled, advised, prayed with and transported children, including Plaintiff, to the State of Florida with the knowledge and consent of the DIOCESE and LESSARD, and in furtherance of the DIOCESE and/or LESSARD's business.

64.     During the aforementioned trip, BROWN would go to churches that were operated or controlled by the DIOCESE, spent the night with Plaintiff in the rectories of the DIOCESE, and engaged in other inappropriate activities with Plaintiff, in the presence of and with the knowledge of other priests, employees, and/or agents of the DIOCESE and/or LESSARD.

65.     During the aforementioned trip, priests, employees, and/or agents of the DIOCESE and/or LESSARD assisted BROWN, by making accommodations for Plaintiff and BROWN to lodge in the rectories, churches, and other properties owned, operated or under the control of the DICOESE, as well as by making and/or assisting in making accommodations for Plaintiff and BROWN in the State of Florida.

66.     Prior to travelling to Florida, BROWN and Plaintiff travelled to Savannah, Georgia, where they stayed, among other places, at the home of a prominent employee, agent, or representative of the DIOCESE.

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 13**

67.     While staying in and around Savannah, Georgia, and before being taken to Florida by BROWN, Plaintiff came in contact with then Bishop LESSARD of the DIOCESE of Savannah.

68.     LESSARD met BROWN and Plaintiff at the Bishop's office, on the property of the DIOCESE.

69.     LESSARD expressed his concerns to BROWN and Plaintiff regarding the relationship between Plaintiff and BROWN and asked the then young child Plaintiff if he was alright.

70.     Despite the knowledge of the DIOCESE and/or LEASSARD regarding the prior and recent history of BROWN's conduct with, affinity for, and danger to young boys, Plaintiff included, the DIOCESE and/or LESSARD failed and/or refused to protect Plaintiff from the harmful acts of BROWN, to supervise, or otherwise control Defendant BROWN.

71.     Despite the knowledge of the DIOCESE and/or LESSARD regarding the prior history and recent history of BROWN's conduct with, affinity for, and danger to young boys, Plaintiff included, the DIOCESE and/or LESSARD failed and/or refused to warn Plaintiff or Plaintiff's family of the sexually deviant propensities of BROWN.

72.     In or about the summer of 1978, BROWN, an active priest, employee, and/or agent of the DIOCESE, took Plaintiff on a trip, with the knowledge and/or consent of the DIOCESE and/or LESSARD, which lasted approximately one month in and around the states of Georgia, South Carolina, and Florida.

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 14**

73.     While in Savannah and at the home of the prominent employee, agent and/or representative of the DIOCESE, BROWN began hugging Plaintiff and engaging in physical contact with Plaintiff, including kissing on the lips.

74.     From Savannah, Georgia, BROWN and Plaintiff proceeded to Jacksonville, Florida.

75.     Accommodations for BROWN and Plaintiff were arranged by the DIOCESE, its agents, employees, or representatives, who had also provided accommodations in or around Savannah, Georgia and other locations and/or properties owned and/or operated by the DIOCESE for BROWN and Plaintiff.

76.     While in Jacksonville, Florida, with Plaintiff, BROWN exposed Plaintiff to pornographic material.   Thereafter, while in Jacksonville, Florida, BROWN sexually molested Plaintiff.

77.     Prior to, during, and after various episodes of sexual molestation of Plaintiff in Jacksonville, BROWN would perform his priestly duties with the Plaintiff and would have on his priestly attire, collar, and/or cross, pray with Plaintiff and discuss confession, the sacraments, Catholicism, and the morals and teachings of the Catholic faith.

78.     From Jacksonville, Florida, BROWN and Plaintiff proceeded to Orlando/Kissimmee Florida (Walt Disney World).

79.     While staying in the Orlando/Walt Disney World area, BROWN again sexually molested Plaintiff.

Doe v. One Beacon America Insurance Company
Complaint
Page 15

80.     Prior to, during, and after various episodes of sexual molestation of Plaintiff in Orlando, BROWN would perform his priestly duties with the Plaintiff and would have on his priestly attire, collar, and/or cross, pray with Plaintiff and discuss confession, the sacraments, Catholicism, and the morals and teachings of the Catholic faith.

81.     From Orlando/Kissimmee, Florida (Walt Disney World), BROWN and Plaintiff then proceeded back to Savannah, Georgia.  While staying in and around Savannah, Georgia, BROWN continued to sexually molest Plaintiff.  From Savannah, Georgia, BROWN and Plaintiff proceeded to the Jasper County/Beaufort County area of South Carolina where they stayed with a prominent family of the Catholic Church at a summer vacation home. While staying in the Jasper County/Beaufort County area of South Carolina, BROWN continued to sexually molest the Plaintiff.  From Jasper County, South Carolina, BROWN and Plaintiff proceeded to Augusta, Georgia where they stayed in a rectory owned or operated by the DIOCESE and/or LESSARD. While in Augusta, Georgia, BROWN continued to sexually molest the Plaintiff.  From Augusta, Georgia, BROWN and Plaintiff proceeded to Rome, Georgia, where they stayed at the residence of BROWN's mother.  While in Rome, Georgia, BROWN continued to sexually molest the Plaintiff.

82.     Prior to, during, and after various episodes of sexual molestation of Plaintiff in the States of Georgia and South Carolina, BROWN would perform his priestly duties with the Plaintiff and would have on his priestly attire, collar, and/or cross, pray with Plaintiff and discuss confession, the sacraments, Catholicism, and the morals and teachings of the Catholic faith.

83.    While staying in the Florida towns/cities aforementioned and in and around the state of Georgia and South Carolina, BROWN instructed Plaintiff to lie and tell the other priests of the DIOCESE and others that Plaintiff slept on the floor in a sleeping bag if Plaintiff was ever asked about their sleeping arrangements.

84.    Based on the relationship of trust and confidence as cultivated by BROWN and encouraged/promoted by the DIOCESE and/or LESSARD, Plaintiff justifiably believed and relied on BROWN and, thereby, followed the advice, counsel, prayer, and rituals practiced by BROWN.

85.    By the words and actions of the DIOCESE and/or LESSARD, Plaintiff, then a minor, reasonably believed that the actions, conduct, and counseling of BROWN was authorized and/or condoned by the DIOCESE and/or LESSARD, proper, blessed, and/or in compliance with the teachings and morals of the DIOCESE.

86.    The DIOCESE and/or LESSARD, during the period of Plaintiff's minority, actively concealed from Plaintiff and his parents the facts known to them concerning BROWN's conduct with minors, including the sexual actions and molestation by BROWN against Plaintiff and others.

87.    The DIOCESE and/or LESSARD, after Plaintiff reached the age of majority, continued to conceal from Plaintiff, his parents, and others the facts known to them concerning BROWN's conduct with minors, including the sexual actions and molestation by BROWN against Plaintiff and others.

88.     Upon reaching majority, Plaintiff entered into a career of military service with the United States Armed Forces.

89.     Plaintiff served in the military from the December 15, 1984 to March 31, 2008.

90.     Plaintiff is entitled to the protections and rights set forth in the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C. § 501, *et seq*. due to his long history of service to this country in the United States Armed Services.

91.     At all times material hereto, BROWN was an employee, agent, and/or representative of the DIOCESE and/or LESSARD and was acting within the scope of such employment and/or agency relationship.

92.     As a result of BROWN's employment with the DIOCESE and/or LESSARD, he was enabled to be in close and intimate contact with children and families associated with the DIOCESE, including Plaintiff and his family.

93.     At all times material hereto, the DIOCESE and/or LESSARD owed a duty to the Plaintiff of reasonable care to Plaintiff in the hiring and retention of BROWN.

94.     It was negligent and unreasonable for the DIOCESE and/or LESSARD to hire, retain, and/or employ BROWN into the seminary of the DIOCESE of Savannah.

95.     It was negligent and unreasonable for the DIOCESE and/or LESSARD to hire, retain, and/or employ BROWN as an employee of the DIOCESE of Savannah.

96.     It was negligent and unreasonable for the DIOCESE and/or LESSARD to hire, employ, and/or retain BROWN as an employee in light of the information that the DIOCESE and/or LESSARD knew or should have known as to BROWN's inappropriate conduct and

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 18**

dangerous propensities regarding young boys, among other things, as exhibited by and admitted by BROWN, prior, during, and after his employ as an employee of the DIOCESE.

97.     It was reasonably foreseeable to the DIOCESE and/or LESSARD, at the time of hiring BROWN, or during BROWN's employment, that BROWN would be a danger, sexual predator and threat to young boys under his guidance and supervision, Plaintiff included.

98.     At all times material hereto, the DIOCESE and/or LESSARD owed a duty of reasonable care to Plaintiff to supervise the actions of BROWN.

99.     At all times material hereto including the summer of 1978, the DIOCESE and/or LESSARD breached their duty to Plaintiff to supervise the actions of BROWN.

100.     It was negligent and unreasonable for the DIOCESE and/or LESSARD to fail to properly supervise BROWN in light of the information that the DIOCESE and/or LESSARD knew, or should have known, as to the inappropriate conduct and dangerous propensities regarding young boys as exhibited by and admitted by BROWN prior to, during, and after his acceptance into the seminary and/or priesthood of the DIOCESE.

101.     It was negligent and unreasonable for the DIOCESE and/or LESSARD to not adequately control BROWN despite what the DIOCESE and/or LESSARD knew, or should have known, as to the inappropriate conduct and dangerous propensities regarding young boys as exhibited by and admitted by BROWN prior to, during, and after his acceptance into the seminary and/or priesthood of the DIOCESE.

102.    The DIOCESE and/or LESSARD owed duties of due care toward Plaintiff.  The

DIOCESE and/or LESSARD breached those duties and were negligent in relation to Plaintiff, in

that they failed to:

(a)    Monitor BROWN's behavior, while knowing of his affinity and propensities toward young boys;

(b)    Properly investigate BROWN's background to determine his proclivities toward deviant sexual conduct perpetrated upon individuals such as Plaintiff;

(c)    Address BROWN's past conduct either at the time he first became involved with Defendants or subsequently thereafter;

(d)    Ignoring BROWN's known predilections toward young boys when it was known or the DIOCESE and/or LESSARD should have known of those predilections;

(e)    Allowing BROWN to work with young boys, including Plaintiff, alone and unsupervised;

(f)    Shield Plaintiff from dangerous conditions, situations and individuals including child predators such as BROWN;

(g)    Warn Plaintiff and/or his family of BROWN's deviant sexual proclivities;

(h)    Fulfill their duties *in loco parentis* to Plaintiff;

(i)    Educate Plaintiff and/or his family about the dangers of sexual abuse of minors in youth programs such as those conducted by the DIOCESE and/or LESSARD through BROWN;

(j)     Warn the Plaintiff and/or his parents of a priest known to be an "emotionally immature" individual with an abnormal affinity toward young boys and known to act inappropriately on that interest;

(k)     Supervise BROWN in a manner so as to eliminate, limit, and/or reduce his chances to sexually abuse children;

(l)     Take steps to report to civil and criminal authorities a priest who is known or alleged to have sexually abused children;

(m)     Notify parents of those children who have been exposed to BROWN of the DIOCESE and/or LESSARD's knowledge of BROWN's conduct with minor boys;

(n)     Exercise due care for the safety and well-being of Plaintiff;

(o)     Control and/or take adequate steps to control BROWN despite knowledge of his danger to young boys;

(p)     Exercise the amount of care a reasonable and prudent person would under the circumstances of this case;

(q)     Limit and/or restrict BROWN'S access and/or exposure to minor children;

(r)     Take appropriate measures to protect and/or safeguard the Plaintiff from the reasonably foreseen harm;

(s)     in such other particulars as the evidence may show.

103.     At all times material hereto, BROWN owed a duty of care to Plaintiff to care for his safety and well being and to control and/or take adequate steps to control himself around

young boys, exercise the amount of care a reasonable and prudent person would under the circumstances of this case, and take appropriate measures to protect and/or safeguard the Plaintiff from reasonably foreseeable harm from or by BROWN himself.

104.    Brown, despite knowledge that he was a danger to children, did not disclose his sexual attraction to young boy to Doe or the Doe family. He continued to counsel and otherwise create and maintain a relationship of trust and confidence with Doe. During these and other counseling, confessional, and otherwise fiduciary interactions, Brown improperly and negligently advised Doe and/or negligently failed to act in Doe's best interests.

105.    Based on the relationship of trust and confidence as cultivated by Brown, Doe justifiably believed and relied on Brown and, thereby, followed the advice, counsel, prayer, and rituals practiced by Brown.  Brown undertook a duty to provide a safe environment for Doe and entered into a relationship of trust and confidence whereby a fiduciary relationship was formed. Doe reposed trust and confidence in Defendants and in Brown as his priest, teacher, confessor, and counselor.

106.    BROWN breached his duty of care to Plaintiff by failing to warn Plaintiff and/or by failing to take adequate steps to protect and safeguard Plaintiff by exposing him to foreseeable danger.

107.    As a direct and proximate result of the aforementioned negligence of the DIOCESE, LESSARD and/or BROWN, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment, among other damages for which the

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 22**

DIOCESE, LESSARD and/or BROWN are liable.   The losses are permanent and continuing in nature and Plaintiff will suffer such losses in the future.

108.    At all material times, the INSURANCE CO. provided liability insurance to the DIOCESE and/or LESSARD (policy nos. CZ-9745-001 and CZ 9745-005) with liability policy limits in the amount of $300,000.00.   Copies of the insurance policies are attached and incorporated herein by reference as Exhibit "A".   One or both of the policies were in full force and effect at the time of the aforementioned abuse of the Plaintiff, and provided coverage to the DIOCESE, LESSARD and/or BROWN (hereinafter collectively the "INSUREDS") for liability resulting from any negligence committed by the INSUREDS that was the proximate cause of injury to the Plaintiff.

109.    The INSUREDS have complied with all of the terms and conditions of the insurance policies described above.   Further, notice of Plaintiff's claims was timely given to INSURANCE CO.

110.    INSURANCE CO. was timely given notice of the suit captioned "DOE v. THE ROMAN CATHOLIC DIOCESE OF SAVANNAH SOLE, THE MOST REV. RAYMOND W. LESSARD, MOST REV. J. KEVIN BOLAND, INDIVIDUALLY AND IN HIS CAPACITY AS BISHOP OF THE ROMAN CATHOLIC DIOCESE OF SAVANNAH, and WAYLAND YODER BROWN" Case No. 16-2010-CA-3300, in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida (hereinafter the "Original Litigation").

111.    The Original Litigation was filed on or about March 4, 2010.

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 23**

112.    INSURANCE CO. knew or should have known that there were facts sufficiently certain as to establish the liability of the INSUREDS so that it was probable that a verdict and judgment in favor of the Plaintiff would be entered against the INSUREDS on the issue of liability and damages if the claims were not settled.

113.    INSURANCE CO. knew or should have known that the injuries and damages suffered by the Plaintiff were of such a nature that if their claims were not settled, said claims would result in a verdict and judgment in favor of the Plaintiff and against the INSUREDS in an amount far in excess of the policy limits of the insurance policies issued by the INSURANCE CO.

114.    Initially, the INSURANCE CO. agreed to defend the DIOCESE and LESSARD under a reservation of rights in the Original Litigation.  The INSURANCE CO. never fulfilled its obligation and duty to defend BROWN, and did not in fact defend BROWN in the Original Litigation.

115.    On numerous occasions both prior to the filing of the Original Litigation and during the course of the Original Litigation, the Plaintiff attempted to reach a settlement with the INSUREDS through negotiations with counsel provided to the DIOCESE and LESSARD by the INSURANCE CO.

116.    Each and every attempt to settle the Original Litigation in good faith was refused by the INSURANCE CO.

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 24**

117.     After extensive discovery had taken place in the Original Litigation, a mediation was scheduled to take place in September 2010.  The INSURANCE CO. refused to participate in the mediation and specifically instructed the INSUREDS not to participate in the mediation.

118.     As a result of the INSURANCE CO.'s refusal to engage in good faith settlement discussions with the Plaintiff, the DIOCESE and LESSARD made a written demand for the insurance policy liability limits and instructed the INSURANCE CO. that if said limits were not tendered the DIOCESE and LESSARD were discharging the defense by INSURANCE CO. and taking over the defense of the Original Litigation.

119.     The INSURANCE CO. refused to tender the insurance policy limits as demanded by the DIOCESE and LESSARD.

120.     As a result, the DIOCESE and LESSARD rejected the defense being provided by the INSURANCE CO. and took over the defense of the Original Litigation.

121.     Following the DIOCESE and LESSARD's takeover of their own defense, the Original Litigation proceeded wherein a final judgment was entered on January 19, 2011, in favor of the Plaintiff against the DIOCESE and LESSARD for the sum of Five Million Dollars ($5,000,000.00), together with interest at the statutory rate, and a Final Summary Judgment was entered on November 18, 2011, against BROWN for the sum of Fifty Million Dollars ($50,000,000.00) together with interest at the statutory rate.     A copy of the 1st Judgment is attached and incorporated herein by reference as Exhibit "B".  A copy of the 2nd Judgment is attached and incorporated herein as Exhibit "C".

122.    The INSUREDS assigned to the Plaintiff any and all rights and actions they had or that may have arisen, as a result of the Original Litigation, against the INSURANCE CO. relating in any way to the insurance policies issued by the INSURANCE CO, and such actions or inactions as were engaged in by INSURANCE CO.

## COUNT I
### (Declaratory Judgment)

123.    The Plaintiff re-alleges and incorporates herein by reference the allegations in paragraphs 1 through 122, above.

124.    This is an action for declaratory relief, pursuant to *Fla. Stat.* § 86.011, to determine and declare the rights of the INSUREDS under the insurance policies described above that were issued by the INSURANCE CO. to the INSUREDS, and the obligations of the INSURANCE CO. under said policies.

125.    Plaintiff contends that the INSUREDS were covered by the insurance policies and that the INSURANCE CO. had a duty to defend the INSUREDS without a reservation of rights and a duty to indemnify the INSUREDS for damages incurred as a result of a covered loss.

126.    There is a controversy between the parties regarding whether the INSUREDS were entitled to coverage for the aforementioned described damages under said insurance policies, and whether the policies give rise to a duty by the INSUNRANCE CO. to indemnify the INSUREDS.

127.    Declaratory relief is proper pursuant to Chapter 86, *Florida Statutes*, because Plaintiff, on behalf of the INSUREDS, is in doubt as to the INSUREDS' rights under the

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 26**

applicable policies of insurance based on the INSURANCE CO's contention that there is no insurance coverage for the damages suffered by the Plaintiff.

128.     The Plaintiff has complied with all conditions precedent to bring this action against the INSURANCE CO.

129.     An actionable and justiciable controversy exists between the parties with respect to the coverages, rights, duties and obligations under the aforementioned subject insurance policies. The specific controversies include, but are not limited to, the following:

(a)     Whether there was coverage for INSUREDS under the insurance policy in effect on the date of the loss;

(b)     Whether INSURANCE CO. is legally obligated to indemnify the INSUREDS or pay any sums or damages to or on behalf of the INSUREDS pursuant to the aforementioned subject insurance policies; and

(c)     Whether the INSURANCE CO. is obligated to pay the Plaintiff's attorneys fees under § 627.428 *Fla.Stat.* to establish the existence of insurance coverage at issue in this action.

WHEREFORE, Plaintiff JOHN DOE respectfully requests that this Court enter a declaratory judgment against the Defendant ONEBEACON AMERICA INSURANCE COMPANY f/k/a COMMERCIAL UNION INSURANCE COMPANY, determining the INSUREDS were entitled to insurance coverage for the aforementioned loss under the aforementioned policies of insurance, and that the Defendant breached the duty to indemnify the

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 27**

INSUREDS for the loss, and awarding the Plaintiff all costs, pre-judgment interest, post-judgment interest, and attorney's fees awardable pursuant to all applicable Florida law including but not limited to § 627.428 *Fla.Stat.*, and for any further relief as this Court deems appropriate and just.

<u>**COUNT II**</u>
**(Breach of Contract)**

130.    The Plaintiff re-alleges and incorporates herein by reference the allegations in paragraphs 1 through 122, above.

131.    Pursuant to the terms and conditions of the subject insurance policies, the INSURANCE CO. had an obligation and duty to provide the INSUREDS insurance coverage and a defense.   The INSURANCE CO. had a further duty: to act in good faith toward the INSUREDS; to advise the INSUREDS of the probable outcome of the Original Litigation, to advise any steps that might be taken to avoid and/or minimize any excess judgment, to investigate all relevant facts surrounding the Original Litigation; to give fair consideration to all reasonable settlement offers; and under the facts and circumstances presented in the Original Litigation had an affirmative duty to initiate settlement negotiations with the Plaintiff.

132.    The INSUSURANCE CO. breached its duties pursuant to the subject insurance policies by denying coverage, failing to act in good faith, and by unreasonably refusing to participate in meaningful settlement negotiations with the Plaintiff.

133.    As a direct and proximate result of the INSURANCE CO.'s breaches, the INSUREDS suffered damages, including but not limited to, the loss of the insurance proceeds

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 28**

that are due and payable under the subject insurance policies and all other damages flowing from

the failure of the INSURANCE CO. to pay such insurance proceeds.

134.    Pursuant to an assignment of rights and claims from the INSUREDS to the

Plaintiff, the Plaintiff is entitled to an award for damages against the INSURANCE CO.

135.    The Plaintiff is entitled to recover attorney's fees and costs pursuant to § 627.428

*Fla. Stat*.

WHEREFORE, Plaintiff JOHN DOE respectfully requests that this Court award a

judgment against the Defendant ONEBEACON AMERICA INSURANCE COMPANY f/k/a

COMMERCIAL UNION INSURANCE COMPANY, for damages, costs, pre-judgment interest,

post-judgment interest, and attorney's fees, and for any further relief as this Court deems

appropriate and just.

### COUNT III
**(Bad Faith- the DIOCESE and LESSARD)**

136.    The Plaintiff re-alleges and incorporates herein by reference the allegations in

paragraphs 1 through 122, above.

137.    By virtue of the insurance contracts, the INSURANCE CO. and its employees and

agents had a duty to use due care in the investigation of the above described incident and the

handling of the claim and evaluation of the claim for settlement purposes, and had a duty to act

in good faith and give due consideration to the interests of the DIOCESE and LESSARD in the

negotiation and settlement of the Plaintiff's claim and to consider all of the circumstances of the

claim, and to settle the claim, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery would do so.

138.    The INSURANCE CO. was further obligated to advise the DIOCESE and LESSARD of settlement opportunities, to advise as to the probable outcome of the Original Litigation, and to warn the INSUREDS of the possibility of an excess judgment.

139.    In light of the well established facts and circumstances of the Original Litigation and the knowledge of the INSURANCE CO. of those facts and circumstances, the INSURANCE CO. had an affirmative duty to not only negotiate a settlement in good faith, but to initiate settlement negotiations with the Plaintiff.

140.    The INSURANCE CO. breached its duties to the DIOCESE and LESSARD and acted in bad faith in that, under all the circumstances, it acted in its own interests and disregarded the interests of the DIOCESE and LESSARD by:

>       (a)     Failing to accept a reasonable settlement offer and opportunity to settle this case prior to the filing of the Original Litigation;

>       (b)     Failing to exercise reasonable care and good faith in the investigation, negotiation and attempted settlement of the claim by the Plaintiff against the DIOCESE and LESSARD;

>       (c)     Failing to advise the DIOCESE and LESSARD of settlement opportunities and affirmatively instructing the DIOCESE and LESSARD not to engage in good faith settlement negotiations with the Plaintiff; and

        (d)     Negligently handling the investigation, evaluation, negotiation and settlement of the Plaintiff's claims against the DIOCESE and LESSARD.

141.    The Original Litigation and the Plaintiff's attempts to settle with DIOCESE and LESSARD took place in Duval County, Florida, and the aforementioned breaches and bad faith conduct of the INSURANCE CO. took place in Duval County, Florida.

142.    The DIOCESE and LESSARD assigned and transferred to the Plaintiff, any and all claims, rights, or entitlements to proceeds of or from any and all claims and/or causes of action, of whatsoever kind and nature, including but not limited to those under the aforementioned 1st Judgment that has been entered against the DIOCESE and LESSARD arising from the bad faith handling of the claims of the Plaintiff that resulted from the aforementioned conduct of the DIOCESE and LESSARD and/or BROWN, and/or the INSURANCE CO.'s breach of any fiduciary or other duty or obligation owed to the DIOCESE and LESSARD. The assignment from the DIOCESE and LESSARD to the Plaintiff is attached and incorporated herein by reference as Exhibit "D".

143.    The Plaintiff is entitled to recover damages from the INSURANCE CO. for its bad faith, to include but not limited to the aforementioned 1st Judgment.

144.    Plaintiffs are entitled to recover his reasonable attorney's fees and costs pursuant to § 627.428 *Fla.Stat.*

        WHEREFORE, Plaintiff JOHN DOE respectfully requests that this Court award a judgment against the Defendant ONEBEACON AMERICA INSURANCE COMPANY f/k/a COMMERCIAL UNION INSURANCE COMPANY, for damages, costs, pre-judgment interest,

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 31**

post-judgment interest, and attorney's fees, and for any further relief as this Court deems appropriate and just.

## COUNT IV
### (Bad Faith – BROWN)

145. The Plaintiff re-alleges and incorporates herein by reference the allegations in paragraphs 1 through 122, above.

146. By virtue of the insurance contracts, the INSURANCE CO. and its employees and agents had a duty to use due care in the investigation of the above described incident and the handling of the claim and evaluation of the claim for settlement purposes, and had a duty to act in good faith and give due consideration to the interests of BROWN in providing a defense to the Original Litigation and in the negotiation and settlement of the Plaintiff's claim and to consider all of the circumstances of the claim, and to settle the claim, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery would do so.

147. The INSURANCE CO. was further obligated to advise BROWN of settlement opportunities, to advise as to the probable outcome of the Original Litigation, and to warn the BROWN of the possibility of an excess judgment.

148. In light of the well established facts and circumstances of the Original Litigation and the knowledge of the INSURANCE CO. of those facts and circumstances, the INSURANCE CO. had an affirmative duty to not only negotiate a settlement in good faith, but to initiate settlement negotiations with the Plaintiff.

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 32**

149.    The INSURANCE CO. breached its duties to BROWN and acted in bad faith in that, under all the circumstances, it acted in its own interests and disregarded the interests of BROWN by:

(a)    Failing to accept a reasonable settlement offer and opportunity to settle this case prior to the filing of the Original Litigation;

(b)    Failing to exercise reasonable care and good faith in the investigation, negotiation and attempted settlement of the claim by the Plaintiff against BROWN;

(c)    Failing to provide a defense and advise BROWN of settlement opportunities; and

(d)    Negligently handling the investigation, evaluation, negotiation and settlement of the Plaintiff's claims against BROWN.

150.    The Original Litigation aforementioned breaches and bad faith conduct of the INSURANCE CO. took place in Duval County, Florida.

151.    The Plaintiff is entitled to recover damages from the INSURANCE CO. for its bad faith, to include but not limited to the aforementioned $50 million 2nd Judgment against BROWN.

152.    Plaintiffs are entitled to recover his reasonable attorney's fees and costs pursuant to § 627.428 *Fla.Stat.*

WHEREFORE, Plaintiff JOHN DOE respectfully requests that this Court award a judgment against the Defendant ONEBEACON AMERICA INSURANCE COMPANY f/k/a

**Doe v. One Beacon America Insurance Company**
**Complaint**
**Page 33**

COMMERCIAL UNION INSURANCE COMPANY, for damages, costs, pre-judgment interest, post-judgment interest, and attorney's fees, and for any further relief as this Court deems appropriate and just.

**JURY DEMAND**

The Plaintiff demands trial by jury of issues so triable.

Dated : December 21, 2011                    Respectfully submitted,

                                                      **SIEGEL HUGHES & ROSS**

                                                       _S/ W. Charles Hughes_____
                                                      BRENT G. SIEGEL
                                                      Fla. Bar No. 349208
                                                      bsiegel@shrlawfirm.com
                                                      W. CHARLES HUGHES
                                                      Fla. Bar No. 627781
                                                      chughes@shrlawfirm.com
                                                      4046 Newberry Road
                                                      P.O. Box 90028
                                                      Gainesville, Florida  32607
                                                      (352) 375-7700 / Fax: (352) 375-1080
                                                      Counsel for plaintiffs