IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JOHN DOE,

    Plaintiff,

v.                              CASE NO. 1:11-cv-275-MP-GRJ

ONEBEACON AMERICA INSURANCE
COMPANY f/k/a COMMERCIAL UNION
INSURANCE COMPANY,

    Defendant.

_____/

## ORDER

This matter is before the Court on Defendant Onebeacon America Insurance Company's Motion for Protective Order, Plaintiff John Doe's Motion to Compel Discovery, and Defendant's Motion to Strike Notice of Additional Authority.  (Docs. 28, 37, 52.)   The Court conducted a hearing to address the motion for protective order and motion to compel on October 18, 2012.  Upon due consideration of the motions and responses, as well as the parties' subsequent filings, the Court finds that Defendant's motion for protective order is due to be granted, while Plaintiff's motion to compel is due to be granted in part and denied in part.  The Court finds that Defendant's motion to strike is due to be denied.

## DISCUSSION

This case arose from a state-court action by Plaintiff against the insureds of OneBeacon, a liability insurer, and the Defendant in this case.  Defendant offered to defend the state court case subject to a reservation of rights. The insureds initially accepted this defense.  Prior to trial, however, the state court case settled as to the Diocese of Savannah (the "Diocese"), one of the insureds under the relevant policy.

Apparently, joint stipulation and agreement entered into between the Plaintiff and the Diocese was negotiated and concludes without the consent of the Defendant.

According to Plaintiff, Defendant's failure to provide an adequate defense justified the insured acting independently to settle the case. Defendant, on the other hand, argues that the Diocese (the insured) breached its duty to cooperate with the insurance company's defense attorneys. Following execution of the settlement agreement between Plaintiff and the insured, the insured assigned its rights against the Defendant insurance company to Plaintiff. Plaintiff then brought suit in this Court, seeking a declaratory judgment with respect to insurance coverage, and claiming that Defendant had acted in bad faith in the underlying litigation. The Court abated the bad faith claims until the underlying issue of whether the claims are covered is determined. (Doc. 12.) Thus, as the pleadings now stand, the only issue before the Court relates to Plaintiff's coverage claim.

## 1. *Defendant's Motion for Protective Order*

In Defendant's motion for protective order Defendant requests the Court to enter an order preventing Plaintiff from obtaining documents from Gerald Weedon and Joseph Brennan, attorneys for the insureds in the underlying state-court litigation. (Doc. 28.) The requested documents include the attorneys' case files for the underlying litigation and any correspondence between the attorneys and Defendant related to the underlying litigation. Defendant objected to production of these documents on the grounds of relevance, attorney-client privilege, and work product privilege. At the hearing on October 18, 2012, Plaintiff's counsel advised the Court that Mr. Weedon and Mr. Brennan had, in fact, already produced documents responsive to the subpoenas, as well as a privilege log. At the time of the hearing, Plaintiff's counsel had not examined

the documents or the privilege log, and was holding the documents under seal pending the Court's ruling on the discovery motions. Defendant's counsel likewise had not examined the documents. The Court directed Plaintiff to provide the documents to Defendant's counsel for examination, and directed Defendant's counsel to submit a report to the Court advising whether Defendant had any remaining objections—to the produced documents or to the documents listed on the privilege log—on the grounds of attorney-client or work product privilege. Plaintiff's counsel filed the third-party privilege log on October 19, 2012. (Doc. 46.) Defendant's counsel submitted the required reports on October 30, 2012 and November 2, 2012, and advised that Defendant had reviewed the Weedon and Brennan documents and had not identified any documents subject to attorney-client or work product privilege. (Docs. 50, 51.) Accordingly, Defendant's motion for protective order and Plaintiff's motion to compel are ripe for decision.

In Defendant's motion for protective order Defendant argues that the files of Mr. Weedon and Mr. Brennan are protected by the attorney-client privilege and are not relevant to the coverage issues presented in this case. As discussed above, Defendant's counsel has filed notices with the Court stating that Defendant no longer challenges any documents that Mr. Weedon and Mr. Brennan have already produced. However, Defendant's notices do *not* disclose that Defendant has waived claims of relevance or privilege with respect to the documents listed on the third-party privilege log. (Doc. 46.) The following discussion, therefore, will assume that Plaintiff still seeks—and Defendant still objects to—production of the documents listed on the privilege log.

Defendant argues that while Mr. Weedon and Mr. Brennan's case files might be

relevant to Plaintiff's bad faith claims, those files are not relevant to the coverage claims presently before the Court. Plaintiff, on the other hand, advances the argument that the case files are discoverable, despite the fact that Plaintiff's bad faith claims have been abated. In support of this argument Plaintiff points to Defendant's affirmative defense in which Defendant asserts that there is no insurance coverage for the underlying litigation because the insured breached its duty to cooperate with Defendant by engaging in secret settlement negotiations with Plaintiff without Defendant's knowledge or consent. This affirmative defense, Plaintiff argues, makes Mr. Brennan and Mr. Weedon's case files relevant and discoverable even during the coverage portion of the instant litigation.

With respect to privilege, Plaintiff's counsel argues that Plaintiff now "stands in the shoes" of the insured from the underlying litigation, by virtue of the insured's assignment to Plaintiff of all of its rights against Defendant. Plaintiff argues that by virtue of the assignment of the insured's claim Plaintiff now holds any attorney-client or work product privilege that the insured might have asserted. Plaintiff also argues that Defendant has no standing to assert any claim of privilege with respect to Mr. Brennan, because Mr. Brennan served as private counsel to the insured in the underlying litigation.[1]

Defendant counters that the assignment of claims from the insured to Plaintiff did not explicitly assign the insured's privilege, and as such, Plaintiff does not stand in the shoes of the insured for the purposes of accessing privileged documents. According to

---

[1]Mr. Weedon was hired by Defendant to represent the insureds in the underlying litigation. Plaintiff does not challenge Defendant's standing to assert claims of privilege with respect to Mr. Weedon.

Defendant, while Plaintiff could obtain privileged materials in the attorneys' case files during the bad-faith portion of the litigation, that right does not apply during the coverage portion of the case. Defendant further argues that it has standing to raise claims of privilege under the general principle that an insurer may assert the attorney-client privilege of its insured. The Court will address these three issues—standing, assignment of privilege, and relevance—in turn.

### *Standing*

Plaintiff claims that Defendant lacks standing to assert claims of privilege on behalf of its insured with respect to Mr. Brennan. In his response to the motion for protective order, Plaintiff states that Mr. Brennan was hired as private counsel for the insureds in the underlying litigation, while Mr. Weedon was hired by Defendant. At the hearing, however, Defendant's counsel represented that while Mr. Brennan was initially hired as private counsel for the insureds, Defendant Onebeacon approved Mr. Brennan's hiring and agreed to pay his fees. As such Mr. Brennan's position shifted, then, from purely private counsel to a role analogous to that of Mr. Weedon. Like Mr. Weedon, Mr. Brennan's client was the insured, but he was paid by and reported to Defendant. Thus, insofar as Defendant has standing to assert claims of privilege with respect to Mr. Weedon—because an insurance company has the right to assert privilege on behalf of its insured—it also has standing to assert privilege with respect to Mr. Brennan. *Progressive Express Ins. Co. v. Scoma*, 975 So. 2d 461, 466 (Fla. Dist. Ct. App. 2007) (citing *Visual Scene, Inc. v. Pilkington Bros., PLC*, 508 So. 2d 437 (Fla. Dist. Ct. App. 1987))*.*

Even assuming *arguendo* that Defendant does not have standing to raise

privilege on behalf of its insured in the underlying litigation, as Plaintiff argues, the result is no different because Mr. Weedon and Mr. Brennan -- the attorneys who represented the insured in the underlying state court litigation – have asserted privilege by filing a privilege log. (Doc. 46.) Under Florida law an attorney is permitted to raise attorney-client privilege on behalf of the client. Florida Statutes § 90.502(3).

In this case, Mr. Weedon filed a privilege log asserting that a number of his communications were covered by attorney-client privilege. While only Mr. Weedon signed the privilege log, the log also included at least one communication from Mr. Brennan and several communications to Mr. Brennan, also purportedly covered by attorney-client privilege. Because the attorneys in this case have asserted the privilege on behalf of their clients, Plaintiff's argument that Defendant has no standing to assert privilege must fail.

### *Assignment of privilege*

Separate from Plaintiff's argument that Defendant does not have standing to assert the attorney-client privilege, Plaintiff argues he stands in the shoes of the insured because in the underlying litigation the insured (the Diocese) assigned its rights against Defendant to him. Thus, according to Plaintiff, because he holds the insured's attorney-client privilege the confidential communications between the insured and its attorneys are discoverable.

As a threshold matter, there does not appear to be any dispute that the documents listed in the privilege log are confidential communications to which the attorney-client privilege would attach.[2] (Doc. 46.) Plaintiff does not challenge whether

---

[2]*See Genovese v. Provident Life & Acc. Ins. Co.*, 74 So. 3d 1064, 1067 (Fla. 2011) (describing statutory attorney-client privilege and noting that the "purpose of the

the documents are privileged; rather, he argues that the documents are not privileged *as to him* because he holds the attorney-client privilege of the insured. (Doc. 29, at 5.) Defendant counters that the assignment of rights by the insured does not explicitly waive privilege, and that privileged documents may only be discoverable in the bad-faith portion of the litigation.

The Court concludes that in this stage of the litigation, where the only issue is whether the claims are covered under the relevant policy, Plaintiff does not hold the attorney-client privilege of the insured and thus Plaintiff is not entitled to obtain production of the remaining documents from Mr. Brennan and Mr. Weedon, which are identified on the privilege log.

The cases relied upon by Plaintiff in support of his argument that he is entitled to obtain the privileged documents, do not involve coverage disputes as here, but rather deal with bad-faith claims and as such are not controlling or instructive on the issue.

Generally, under Florida law in third-party bad faith claims material in the insurer's claim and litigation files is discoverable even over claims of work-product privilege. *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121 (Fla. 2005). However, in first party bad faith cases the insured is not entitled to discovery of confidential communications between the insurer and its attorney. *Genovese*, 74 So. 3d at 1067.

The sole dispute in this case at this point is whether the claims are covered. If and only if the Court concludes that the claims in this case are covered will the Plaintiff be permitted to proceed with his bad faith claims. Assuming that occurs the cases relied upon by Plaintiff will then be relevant to the issue of whether communications between

---

[attorney-client] privilege is to encourage clients to make full disclosure to their attorneys.") (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

counsel and the insurer are discoverable.  At this point the cases are not.

Moreover, with regard to Plaintiff's argument that he stands in the shoes of the insured by virtue of the assignment, the assignment in this case does not include any mention of the assignment to Plaintiff of the attorney-client privilege of the Diocese and as such the Court is reluctant to read into the assignment such a right in the face of strong statutory and common law protection for the confidential communications between attorney and client.  The Court finds, then, that Plaintiff is not entitled to the materials listed in the privilege log because they are protected by the attorney-client privilege.  Defendant's motion for protective order is therefore due to be granted.

### *Relevance*

Because the Court concludes that Plaintiff does not hold the attorney-client privilege of the insured, and therefore is not entitled to discover the documents listed on the privilege log, Defendant's argument that the documents are irrelevant to the coverage issue presently before the Court makes no difference.  Nonetheless, because this issue of relevance has a bearing upon Plaintiff's motion to compel production, the Court will briefly address the issue.

 Defendant argues that while Mr. Breenan and Mr. Weedon's files may be relevant to the bad-faith portion of this case—because they may shed light on how Defendant handled the claim and the underlying litigation—the bad-faith claims have been abated and discovery of the files is premature.

According to Plaintiff, the attorneys' files are highly relevant because Defendant has asserted—as a defense to the coverage claim—that no coverage exists because the insured breached its duty to cooperate with Defendant in the underlying litigation. The conduct which is the focus of the lack of cooperation is the settlement by  the

Dioxese of the underlying litigation without Defendant's knowledge and consent. Thus, according to Defendant, because the insured failed to cooperate with Defendant the insured breached the insurance contract and therefore the Defendant is not required to provide coverage, even if the claims are covered. Plaintiff asserts further that separate from the insured's duty to cooperate the Defendant insurance company had a duty of good faith to ensure that the insured cooperated in the underlying litigation, and that the Defendant's breach of the duty of good faith justified the insured's rejection of the defense and the settlement, without the consent of the Defendant.

At the hearing, Defendant's counsel argued that under Florida law, once an insured accepts a defense pursuant to a reservation of rights, the insured cannot then reject the defense and take control of the litigation. This principle, according to Defendant, applies even if the insurer has provided an inadequate defense. The proper remedy for the insured in such a situation is to bring a bad-faith action against the insurer and not to take control of the litigation.

Because this issue had not been adequately briefed, Plaintiff filed a Notice of Filing Additional Authority, referencing two additional cases and providing additional argument relevant to an earlier-cited case. (Doc. 49.) Defendant moved to strike the notice on the grounds that the notice was essentially a reply brief filed without leave, and that the cases cited by Plaintiff were not new law but rather law in existence at the time of the hearing and should have been cited previously. (Doc. 52.)

The Court concludes that while Plaintiff should have filed a motion for leave to file a reply brief, because the Court has taken into account in resolving the discovery dispute Plaintiff's notice of additional authority and Defendant's response no purpose would be served by striking Plaintiff's notice of additional authority and therefore,

Defendant's motion to strike is due to be denied.

Turning then to the issue of whether an insured may reject a defense by the insurance company after the insured has accepted the defense, the law appears to be rather straight forward. Under Florida law once an insured accepts a proffered defense from an insurer the insured may not reject the defense and take control of the case. On the other hand, where an insurer refuses unjustifiably " to defend a suit against the insured [such refusal] relieves the insured of his contract obligation to leave the management of such suit to the insurer and justifies him in assuming the defense of the action on his own account." *Bellsouth Telecomm., Inc. v. Church & Tower of Fla., Inc.*, 930 So. 2d 668, 672 (Fla. Dist. Ct. App. 2006). Further, where an insurer offers to defend its insured under a reservation of rights such an offer "does not constitute a wrongful refusal to defend," and the "insurer retains its right to control the defense." *Continental Cas. Co. v. City of Jacksonville*, 283 F. App'x 686, 690 (11th Cir. 2008) (summarizing Florida law). But because a defense provided under a reservation of rights is conditional, and requires the insured to risk the possibility that the insurer will not pay the judgment, "Florida law does not require an insured to accept such a defense." *Id.*

If the insured, as here, does accept a defense under a reservation of rights, the insured must cooperate with the insurer throughout the course of the litigation. The insurer may not take advantage of the insurer-provided defense, then later reject that defense and attempt to control the litigation itself. This is so even if the defense provided by the insurer is less than adequate. *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.*, 601 F. 3d 1143, 1149 (11th Cir. 2010) (although it was "less clear whether

[the insurer] acted in good faith" in the defense of the insured, "by accepting and not

rejecting [the] full-funded defense, [the insured] was required to cooperate with [the

insurer] throughout the [] litigation."). *See also Continental Cas. Co.*, 283 F. App'x at

690 ("By accepting and not rejecting [the insurer's] fully-funded defense, the [insured]

agreed to leave control of the defense in [the insurer's] hands. Consequently, the

[insured] was required to cooperate with [the insurer] throughout the [] litigation.");

*Zurich Am. Ins. Co. V. Frankel Enter., Inc.*, 509 F. Supp. 2d 1303, 1311-12 (S. D. Fla.

2007) ("If an insured defends under reservation of rights, Florida law provides that the

insured may reject the defense, retain its own counsel, and control the defense,

including entering into a settlement agreement with the claimant. However, unless the

insured rejects the defense, it cannot wrest control of the defense and bind the insurer

to the settlement.") (citing *Travelers Indem. Co. of Ill. v. Royal Oak Enter., Inc.*, 344 F.

Supp. 2d 1358, 1370 (M.D. Fla. 2004)). The only narrow exception to this principle is

where the insurer has provided a defense which the insured accepts, but the insurer

then changes the terms of the defense in a material way. In that instance, the insured

may then be justified in rejecting the defense. *Mid-Continent Cas. Co.*, 601 F. 3d at

1150.

  In this case, Plaintiff does not allege that Defendant materially changed the

terms of the defense that it offered to its insured in the underlying litigation. Rather,

Plaintiff argues that Defendant's refusal to initiate and prompt settlement discussions

justified the insured's rejection of the defense. Because this argument is at odds with

Florida law, the documents related to Defendant's handling of the case at the point that

the insured rejected the defense, and documents following that point in time in the

underlying litigation, are not relevant to the coverage issues presently before the Court. As such, requests for documents relating to these events are not relevant and thus not subject to the scope of discovery, even with regard to the issue of coverage.

## 2. *Plaintiff's Motion to Compel*

Plaintiff requests the Court to direct Defendant to produce documents that are responsive to Plaintiff's First Request for Production, and to provide more complete answers to Plaintiff's first Set of Interrogatories. The Court will address each of Defendant's objections in turn.

### *Requests for Production*

Plaintiff requests the Court to overrule Defendant's objection to Request for Production No. 1, which requested "Your entire file(s) relating to any and all claims regarding John Doe, whose identity is known to the Defendant." Defendant objected to this request on the grounds that an insurance company's claim file, while discoverable in a bad-faith action, is generally protected from discovery in a coverage action. *Allstate Ins. Co. v. Swanson*, 506 So. 2d 497, 498 (Fla. Dist. Ct. App. 1987). Plaintiff argued in its motion that Defendant's affirmative defense, that the insured breached their duty of cooperation with Defendant in the underlying litigation, placed the claim file at issue. At the hearing, however, Plaintiff conceded that if Florida law provides that an insured may not reject a proffered defense after accepting that defense, he would not be entitled to discovery of the claim file even under his own theory. As discussed above, because an insured may not reject a proffered defense after accepting it, the requested documents are not relevant and therefore Plaintiff's motion to compel is due to be denied as to Request for Production No. 1.

Plaintiff requests the Court to overrule Defendant's objection to Request for Production No. 6, which requested "All correspondence involving any and all claims regarding John Doe, and/or the Original Litigation." Defendant objected to this request on the grounds that an insurance company's claim file is generally protected from discovery in a coverage action. As discussed above, Defendant's position is well-taken. Plaintiff's request for production is also overbroad. Therefore, Plaintiff's motion to compel is due to be denied as to Request for Production No. 6.

Plaintiff requests the Court to overrule Defendant's objection to Request for Production No. 7, which requested "All documents, including correspondence and electronic files and emails, exchanged by and/or between the Defendant and the law firms known as Marks Gray, PA, Brennan & Wasden, LLP, Barrow & Ballen, P.C., and/or Fowler White Burnett regarding the claims at issue." Similarly, Plaintiff requests the Court to overrule Defendant's objection to Request for Production No. 8, which requested "All documents, including correspondence and electronic files and emails, exchanged by and/or between the Defendant and Gerald W. Weedon, Esq., Joseph P. Brennan, Esq., J. Curt Thomas, Esq., Joseph Barrow, Esq., and/or James P. Murray, Esq. regarding the claims at issue." These requests for production relate to the same documents at issue in Defendant's motion for protective order, addressed above. Defendant objects to these requests on the grounds that the documents are protected by attorney-client privilege. For the same reasons that Defendant's motion for protective order is due to be granted, Plaintiff's motion to compel is due to be denied as to Requests for Production Nos. 7 and 8.

Plaintiff requests the Court to overrule Defendant's objection to Request for Production No. 9, which requested "All documents, including electronic files, and

emails, exchanged by and/or between the Defendant and Wayland Yoder Brown."

Defendant objected to the request on the grounds that these documents would not be

relevant to the present coverage litigation. For the reasons discussed at the hearing,

the Court finds that the request as currently stated is overbroad, and has the potential

to encompass documents not relevant to the current litigation. However, the Court finds

that Plaintiff's request for production is appropriate if limited to documents exchanged

between Defendant and Wayland Yoder Brown *that are related to the underlying*

*litigation*. So limited, Plaintiff's motion to compel is due to be granted as to Request for

Production No. 9.

Plaintiff requests the Court to overrule Defendant's objection to Request for

Production No. 12, which requested "All documents, whether in paper form, computer

data format or any other medium, which relate in any way to the facts that form the

basis for the affirmative defenses in the Defendant's Answer." Defendant objected to

this request on the grounds that the request was overbroad. As noted at the hearing,

however, Defendant may not assert an affirmative defense and then decline to produce

documents that would support those defenses. The Court finds that all documents that

will support a factual basis for any affirmative defense must be produced. Plaintiff's

motion to compel is due to be granted as to Request for Production No. 12.

### *Interrogatories*

Plaintiff requests the Court to overrule Defendant's objection to Interrogatory No.

6, which asks: "Identify, by case caption and jurisdiction, all claims defended by, or on

behalf of, the Defendant with respect to any policy of insurance issued to the Diocese of

Savannah from 1978 to present." Defendant objected to this interrogatory on the

grounds that it was overly broad and irrelevant to the present coverage litigation. While

Plaintiff suggested at the hearing a limitation on this interrogatory that would limit the

interrogatory to those claims related to the insurance policy at issue in this litigation,

rather than "any policy" the Court, nonetheless, concludes the motion is due to be

denied even with the suggested limitation because information related to other

unrelated lawsuits has no relevance to the Court's legal interpretation of the coverage

issues presently before the Court. Plaintiff's motion to compel is, therefore, due to be

denied as to Interrogatory No. 6.

Plaintiff requests the Court to overrule Defendant's objection to Interrogatory No.

8, which asks: "Identify any and all claims made involving the Diocese of Savannah that

the Defendant has paid any amount of money in settlement or in satisfaction of a

judgment. Please provide the amounts paid, to whom the payments were made, the

nature of the payment, and the duration of the payments." Defendant objected to this

interrogatory on the grounds that it was overly broad and irrelevant to the present

coverage litigation, and that it requested information that was protected by attorney-

client privilege. Plaintiff suggests limiting the interrogatory to claims paid on the policy

at issue here, and argues that payment of a settlement claim is equivalent to a

confession of coverage. The Court finds, however, that even with the suggested

limitation the proposed interrogatory is not relevant to the coverage issues presently

before the Court. Plaintiff's motion to compel is due to be denied as to Interrogatory

No. 8.

Plaintiff requests the Court to overrule Defendant's objection to Interrogatory No.

13, which asks: "Identify by name, address, and title or position, all persons indemnified

by OneBeacon for any claim made on Policy Numbers CZ9745-001 and/or CZ9745-

005." Defendant objected to this interrogatory on the grounds that it was overly broad and irrelevant to the present coverage litigation. The Court finds that this interrogatory is not relevant to the coverage issues presently before the Court. Therefore, Plaintiff's motion to compel is due to be denied as to Interrogatory No. 13.

Accordingly, upon due consideration, it is **ORDERED:**

1.      Defendant's Motion for Protective Order, Doc. 28, is **GRANTED**.

2.      Plaintiff's Motion to Compel Discovery, Doc. 37, is **GRANTED in part and DENIED in part**. The motion is denied as to Requests for Production No. 1, 6, 7, and 8. The motion is granted as to Request for Production No. 9, as limited by the Court. The motion is granted as to Request for Production No. 12. The motion is denied as to Interrogatories No. 6, 8, and 13.

3.      Defendant's Motion to Strike, Doc. 52, is **DENIED**.

**DONE AND ORDERED** this 21st  day of November 2012.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge